# Case No. 12,443.

## SCHEDDA et al. v. SAWYER.

### [4 McLean, 181.] [1]

Circuit Court, D. Ohio. July Term, 1846.

TAX TITLE—PURCHASE BY AGENT—RESPONSIBILITY TO PRINCIPAL—HEIRS—ACT DONE IN NAME OF DECEASED PERSON.

1. A person who assumes to act as agent in redeeming land sold for taxes, is held to have acted in that capacity. And if he shall take advantage of such act, to obtain a title in his own name, for the land, and by a subsequent procedure to perfect the title, he is responsible in the character he at first assumed, and will be held to answer to those in whom the title was vested.

[See Baker v. Whiting, Case No. 787.]

[Cited in Krutz v. Fisher, 8 Kan. 98; Murdock v. Milner, 84 Mo. 103; Onsen v. Cown, 22 Wis. 336.]

2. A demurrer to a bill, admitting the above facts, is overruled, and the defendant required to answer.

[1] [Reported by Hon. John McLean, Circuit Justice.]

3. A title made in the name of a deceased person, under the act of congress of 1836 [5 Stat. 31] enures to the benefit of his heirs.

[Cited in Lamb v. Starr, Case No. 8,022.]

[Cited in brief in Johnson v. Parcels, 48 Mo. 549.]

4. At common law any act is void, which is done in the name of a person deceased.

[This was a bill in equity by Ann C. H. Schedda and others against Nathaniel Sawyer. Heard on demurrer.]

Mr. Stanbery, for complainants.

Taft & Key, for defendant.

OPINION OF THE COURT. In this case the bill states that on the ——— day of 178– a Virginia military land warrant for two thousand six hundred and sixty-six and two-thirds acres was issued to William Ludeman, for his services, etc., numbered 818, which was deposited shortly after, in the office of the principal surveyor, for entry. That on the 24th of June, 1784, one thousand acres were entered by virtue of said warrant by entry No. 165, in Kentucky, leaving one thousand six hundred and sixty-six and two-thirds acres to be located in the Virginia military district in Ohio. That in March, 1786, said William Ludeman died, at Richmond, Virginia, leaving a last will made 1st March, 1786, by which he devised to his sisters, Christina, Sophia and Catharine Juliana, said one thousand acres certificate, and one thousand six hundred and sixty-six and two-thirds acres of land, which are to be located on the Scioto. That the residue of said warrant, was located in two entries, No. 684 for one thousand four hundred and ninety-four acres, August 7th, 1787, and surveyed May 27th, 1794. And No. 3380 for one hundred and seventy-two and two-thirds acres, 25th August, 1798, and surveyed September 1st, 1798. That said Christina intermarried with Francis W. Hampe, both of whom are dead, since the death of the testator, leaving heirs, all of whom are complainants. That the said Catharine, after the death of the testator, died, leaving several heirs, who are also complainants. That on the 29th December, 1823, the said entry, 684, was sold for taxes, and penalties, etc., for the years 1821, '22 and '23, to one Joseph Riggs, for forty-nine dollars and eighty-five cents and three mills, and said Riggs received from the county auditor a certificate of purchase. That about the 9th of August, 1824, the defendant, Sawyer, applied to Riggs to redeem said lands, stating to him that he was the agent of Ludeman's heirs, or of persons acting for them, and seeking to redeem as such agent. That Riggs, on the 9th of August, 1824, received from defendant the amount paid for the taxes, and assigned said certificate to him. That said land was, at that time, worth from two to five thousand dollars. That on the 9th of October, 1824, defendant, to carry out his fraud, presented said certificate to the county auditor, and

procured a deed to himself for said land, from the auditor. That to strengthen his said fraudulent title, defendant, at the March term, 1825, of Adams common pleas, filed his bill quia timet, against the unknown heirs of William Ludeman, and claiming a decree on the footing of his said tax title. And at the October term, 1826, of said common pleas, after publication, against said unknown heirs, a decree pro confesso passed, that said unknown heirs should release all title to said land to Sawyer, and in default thereof, that the decree should operate as such conveyance. That about the 23d May, 1829, the defendant obtained from the surveyor of military district a copy of the plat and certificate of survey, by representing himself as agent for Ludeman's heirs, or by some other means; and on the 26th November, 1830, obtained a patent for said land in his own name. That said decree and patent were obtained by fraud, and by fraudulent statements of the defendant, in order to strengthen his title under the tax sale. That said patent was improperly obtained by defendant; but it conferred on him the legal title which he holds in equity, in trust for complainants. That afterward, defendant, by representing himself to be the agent for Ludeman's heirs, obtained from the surveyor the plat and certificate of survey made in the other entry for 172 acres, and caused a patent to issue thereon, to William Ludeman, which patent is now in defendant's hands. That the complainants, and those under whom they claim, have always been out of the United States, and had no knowledge, until within the last two or three years, of the fraud of defendant. That since the date of the patent for 684, defendant has sold to innocent purchasers parcels of said tract, of whose names complainants are ignorant. That large sums are due from such purchasers, etc. And the bill prays for an account, and for land unsold, etc.

The defendant filed a demurrer to the bill. It is contended the complainants show no title, because the entry No. 684, for 1494 acres, was made Aug. 7th, 1787, and the survey thereof was made May 27th, 1794, all subsequently to Ludeman's death, which happened in March, 1786. From these facts it is supposed that the entry and survey, having been made in the name of a dead person, are void. In the case of Galt v. Galloway, 4 Pet. [29 U. S.] 332, and also in McDonald v. Smalley, 6 Pet. [31 U. S.] 261, the supreme court held that entries in the name of deceased persons were void. But the counsel insists that the court has never decided that a survey executed prior to the act of congress of the 2d of March, 1807 [2 Stat. 424], was void. The proviso in that act is, "that no location, as aforesaid, within the above-mentioned tract shall, after the passing of this act, be made on tracts of land for which patents had previously issued, or which had been previously surveyed." This, it is urged protected the

land from a new location, subsequent to the act. This will probably be the decision of the supreme court when the question shall arise in that court. It has decided that the entry in the name of a dead man is void, on the ground that at common law, all transactions in the name of a deceased person are void. And it may not be clear of doubt, that the above act of congress intended to protect a void survey. A survey without a warrant would be literally within the law; and yet such a survey, being a fraud on the government, could hardly claim protection under the act. The case where an entry is made in the name of a deceased person, is not fraudulent—it is only void, having been made in the name of a person who can have no agency in matters which belong to the living.

By the act of 20th May, 1836, congress have provided that patents issued in the name of deceased persons, shall enure to their heirs, as fully as if the grant had been made to the decedent during life. This is undoubtedly a proper statute, as it relieves from a mistake in behalf of heirs.

But there is another ground on which the complainants may safely rest; and that is, the principle recognized by the court in the case of Galloway v. Finley, 12 Pet. [37 U. S.] 264. The defendant Sawyer, from the statements in the bill, all of which are admitted by the demurrer, whether authorized or not, assumed to act as the agent of the complainants, or of those under whom they claim, in redeeming the land from the tax sale. And, in view of this question, it is immaterial whether he acted under authority or not. He assumed so to act, and in equity he will be considered as so acting. And he is now estopped from denying the title under which the complainants claim. It is the title under which his title originated. Having, by a most singular course of proceeding, endeavored to strengthen this title, and make it his own, he is not now permitted to impugn it, and still claim under it.

The next ground assumed in support of the demurrer is, that the decree of the court of Adams county is final and conclusive, and can not be impeached collaterally, or in any other mode, except by an appeal or a bill of review. The answer to this argument is, that the bill alleges that the decree was obtained through fraud. This is the allegation of the bill, and the demurrer admits the truth of it. All judgments may be impeached for fraud. There is no human transaction, however solemn, but what may be impeached on this ground.

It is argued that the bill does not charge an agency in redeeming the land from the tax sale. The bill declares that he represented himself as agent for complainants. Unless he acted in that capacity, having no interest in the land, he had no right to redeem it. He is not only alleged in the bill to have acted as agent, but the act itself shows that he so acted.

The title of the defendant must be considered as a whole, and not as susceptible of being divided into parts. From the statements in the bill, there seems to have been a settled purpose, by the defendant, to possess himself of the land, from the first step, until the right, as he supposed, was consummated by the patent and the decree of the court. If there are any explanatory circumstances, they may be made to appear hereafter, and possibly may give a new and more favorable aspect to this case. But, as it now stands, it is a case clear of all doubt. The demurrer is overruled.