Murdoch v. Milner.

MURDOCH, *Appellant*, v. MILNER.

1. **Principal and Agent.** Where one is actually or constructively the agent of another, all profits made by him in the business of the agency, beyond his ordinary compensation therein, belong to his employer.

2. **Agent, Purchasing at Tax Sale.** An agent for the owner of real estate cannot become its purchaser at a sale for taxes, without a previous and explicit renunciation of his agency.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

REVERSED.

*Massey & McAfee* for appellant.

(1) Milner was the agent of Murdoch to sell this land; was his agent to pay taxes on same; his agent to protect the interest of his principal of the tax sale on the 29th of May, 1880, and while acting as such agent he bought this land at that tax sale, and being thus the agent of Murdoch, it was a fraud on his part, pure and simple, to take title in his own name and for his own use. The act at once turned him into a trustee *ex malificio.* Story on Agency, sec. 211, and notes; *Squires' Appeal,* 70 Pa. 268; *Morris v. Joseph,* 1 West Va. 256; *Krutz v. Fisher,* 8 Kan. 90; Blackwell on Tax Title, p. 401, and authorities cited there; *Thornton v. Irvin,* 43 Mo. 163–66; *Hunter v. Hunter,* 50 Mo. 445. (2) This land was the subject matter of the agency, and Milner, by reason of this relation of private trust and confidence in relation thereto, was disabled from acquiring, in any manner, any interest in the property adverse to the interest of Murdoch, his principal. He might stand silent at such sale, the only one of all the world debarred from acting for himself concerning said property, and be without blame as an agent, but if he did act, it would be

for the benefit of his principal. The authorities before cited, and *Gardner v. Ogden*, 22 N. Y. 327; *Winn v. Dillon*, 27 Miss. 494; *Bain v. Brown*, 56 N. Y. 285; *Glumby v. Webb*, 44 Mo. 444; *Webster v. King*, 33 Cal. 348.

*C. W. Thrasher* for respondent.

(1) Milner & Lisenby, of which firm respondent, Milner, was a member, were not such agents of Murdoch, the appellant, as to impose upon them any obligation to pay the taxes of appellant on the land in controversy, or to bid in said land at said tax sale for appellant, or in any way to protect said appellant against said taxes. *Kennedy v. Keating*, 34 Mo. 25; Story on Agency, secs. 17, 19, and 126. This view of the case is not only fully sustained by the evidence of what transpired between said parties before the time of the sale of the land for taxes as shown by the record, but is confirmed and made certain beyond a reasonable doubt by what took place between the same parties after said sale. (2) The offer of Milner and Lisenby to Murdoch after the sale of the land for taxes, that he might redeem it, and take the land, was not only never accepted, but directly refused by Murdoch, and does not constitute a contract which appellant can enforce in equity. *Sheffield Canal Co. v. Sheffield & Rotherdam R. R. Co.*, 3 Railway Cases, 121; *Eads v. City of Carondelet*, 42 Mo. 113; *Chicago v. Great Eastern R. R. Co.*, 43 N. Y. 240; *Martin v. Black*, 21 Ala. 721; *Bruner v. Wheaton*, 46 Mo. 363; *Hough v. Brown,* 19 N. Y. 111; *Washington Ice Co. v. Webster*, 62 Me. 343. Even if Murdoch had not absolutely rejected the proposition, the acceptance of it after the lapse of two years, would not be acceptance within a reasonable time so as to bind Milner & Lisenby, and consummate the contract. *Chicago v. Great Eastern R. R. Co.*, 43 N. Y. 240. In this case, Murdoch, after considering the proposition from May to November with-

out making any reply to it, then, by his letter of November 16, 1880, absolutely rejects the offer made him, and ·there the negotiations ended.    (3) The letter of Milner & Lisenby, dated May 29, 1880, did not create Milner the trustee of Murdoch in holding the title of the land as contended by appellant.

NORTON, J.—This is a proceeding in equity, instituted in the circuit court of Greene county, in which it is sought to have defendant declared a trustee for plaintiff of certain real estate described in the petition, and to compel him to account for so much thereof, as he had sold and conveyed.    Issue was joined on the petition, and, upon a trial being had, judgment was rendered for the defendant, from which the plaintiff has appealed on the ground, that under the evidence he was entitled to a judgment and decree in his favor.

It appears from the evidence, as preserved in the record, that plaintiff was a resident of the state of Michigan, and in 1867 purchased and became the owner in fee of certain lands and a lot in the city of Springfield, Greene county, particularly described in the petition; that in 1876 he entrusted the sale of said property to Milner and Lisenby of said city, a firm composed of defendant and John W. Lisenby, having a real estate and abstract office, dealing in real estate and paying taxes in the counties of southwest Missouri.    The correspondence put in evidence by plaintiff between himself and this firm establishes, beyond question, the fact that defendant and his partner were the agents of plaintiff to sell the real estate in question.    It, also, establishes the further fact that taxes from the year 1869 had accumulated on the property, which was an impediment to its sale, and that plaintiff being informed of it, authorized his said agents to procure a loan in Springfield to sufficient money to pay the taxes which he proposed ·to secure by pledging the property ; that they made an arrangement for a loan of $300, forwarded to plaintiff a deed of trust which he

·executed, but having acknowledged the same before a justice of the peace the loan was not perfected. The following correspondence then took place between the parties :

"BERRIEN SPRINGS, MICH., March 13, 1880.

"*Messrs Milner & Lisenby :*

"GENTLEMEN :—I have been away from home so ·much since you returned the papers to me, that I have not had time to attend to it. I am expecting, before the 1st of May, funds sufficient to pay the taxes, when I will visit you and see whether I·can dispose of the property. If not, I will send trust deeds. In the mean time, if you can secure me a purchaser for both pieces so as to net me ·$1,200, close the bargain.

"᠄Yours truly.

"GEO. H. MURDOCH."

"SPRINGFIED, Mo., May 21, 1880.

·"*Geo. H. Murdoch, Esq., Berrien Springs, Mich.*

"DEAR SIR:—Your land is advertised to sell for taxes, and will likely go for taxes and costs, unless paid before sale. We write you so you may know about it, ·as sales are not subject to redemption, except at option of party buying.

"Yours, etc.,

"MILNER & LISENBY."

"BERRIEN SPRINGS, MICH., May 26, '80.

·"*Messrs Milner & Lisenby :*

"GENTLEMEN :—Your note received. I have been expecting means to relieve me entirely. I am sure of it, but cannot fix the exact time when I can reach it. I hope, if you do not hear from me within a reasonable time, you will negotiate a loan. Send me a mortgage and I will return it by return mail. You did not say when sale would take place. I feel quite sure that

within thirty days I can send the money, but may be disappointed in this.    For this reason I hope you will secure the loan in time to return mortgage to you before sale.

"Yours truly,<br>
"GEO. H. MURDOCH."

"SPRINGFIELD, Mo., May 29, 1880.

"DEAR SIR:—Yours received yesterday.    We did not write dates, etc., of sale because we were a little in-different as to the matter, as we had exerted ourselves to get loan before, and it failed through no fault of ours ; *but after yours received yesterday, and as the sale came off to-day, we arranged so as to have it bid off and let you redeem it in a reasonable time.*    So now the lots are sold and can be redeemed, or rather, the party who has received tax deed will quit-claim to you for a small ad-vance on what it would have before cost you, say, about $300 or $315 if paid soon, which would include taxes of 1878 and 1879.    Of course this is only a temporary arrange-ment, and the sale to-day could be enforced and carry title to all of your land, *but we can hold it in this way for a little while.*    Let us know as soon as you can just what you will do.

"Yours, etc.,<br>
"MILNER & LISENBY."

"SPRINGFIED, Mo., Nov. 12, 1880.

"*Geo. H. Murdoch, Esq.:*

"DEAR SIR:—Your property has been sold taxes under our new law, which is done by order of publication for non-residents, and then a judgment is taken and property sold for the taxes, and whoever buys it gets all the title a man has.    In your case the proceedings are all regular, and your lots are sold and you have no interest in them under our law; but we control the matter, so we could make an arrangement for you if you' want to do it,

and write to you now for that purpose. Send us *by return mail* just what you wish to do, and just what you *will do immediately*, and if we can arrange it, will do so ; but if you wish to do anything, it must be done now. Some sales are being made here of lots, and something may be done with these ; but understand that this is your only chance. If not done now, it will stand under tax sale, and there is no redemption.

"Yours, etc.,

"MILNER & LISENBY."

"BERRIEN SPRINGS, MICH., Nov. 16, 1880.
"*Messrs. Milner & Lisenby :*

"GENTLEMEN :—Yours received. ⅃ had the money when you wrote me that the property had been sold, and that purchaser asked a hundred dollars for his profits. I then thought that I would test his title in the United States courts, which I concluded to do. I will not be ready before spring to pay the taxes upon it. If purchaser is willing to do so, I will pay him then with ten per cent. interest. Otherwise, I will try the other course and let 'the tail go with the hide,' or I will quit-claim to him both tracts for $800 cash, or half cash, balance at seven per cent. interest. My purchase of real estate in different parts of the country has kept me embarrassed for a number of years. But I am beginning to get out of that, and will do so shortly.

"Truly yours,

"GEO. H. MURDOCH."

"SPRINGFIELD, Mo., Nov. 19, 1880.
"*Geo. H. Murdoch, Esq., Berrien Springs, Mich.*

"DEAR SIR :—Yours received, and your offer is not at all acceptable to party who bought, who would not give one-half you asked, if that much, as he feels confident of his title, and can hold it in spite of United States court under our present tax law, as proceedings are by

publication, and judgment is regular, and deed is taken, and if your letter is your *ultimatum*, and you propose to let the 'tail go with the hide,' we guess it will have to go.

"Yours respectfully,
"MILNER & LISENBY."

It further appears that at said tax sale the defendant bought the property for the sum of sixty-two dollars and that it was worth between $1,500 and $2,000. It is to be noted that in the letter of May 21, 1880, informing plaintiff that his land had been advertised to be sold for taxes, the time of the sale which occurred on the twenty-ninth of that month was kept concealed from him; not only was the time at which the sale was to be made concealed, but the fact that defendant bought all the property at said sale for sixty-two dollars was not only concealed, but from the tenor of the letters relating to the sale, it was evidently intended to impress the mind of plaintiff with the belief that some third party, disconnected with the agency, had become the purchaser; thus making a strong case not only of *suppressio veri*, but also of *suggestio falsi*. It is clear to us that plaintiff placed the real estate in question in the hands of defendant as his agent to sell it, and it is equally clear that defendant was the agent of plaintiff in negotiating a loan of money with which to pay the taxes due on it, and that defendant acted as plaintiff's agent as to this property when it was sold, and that he bought it is shown by the letter of date the twenty-ninth of May, 1880.

It is further to be noted that in this letter, although defendant bought the property for sixty-two dollars, he proposed to make out of his principal a profit amounting to the difference between sixty-two dollars and three hundred dollars. The facts thus disclosed by the evidence brings plaintiff's case within the operation of the principle that in all cases where a person is actually or constructively an agent for another, all profits and ad-

vantages made by him in the business beyond his ordinary compensation is to be for the benefit of his employer. Story on Agen., p. 246, sec. 211. So in the case of *Bartholomew v. Leech*, 7 Watts 172, it was held that an agent having charge of wild lands of another cannot become a purchaser thereof at a sale for taxes, without a previous and explicit renunciation of the agency, it being observed in the opinion that "the most open and disinterested dealing is required of a confidential agent while he consents to act as such; and there must be an unambiguous relinquishment of his agency before he can acquire an interest in the subject of it. To leave a doubt of his position in this respect is to turn himself into a trustee. It is unnecessary to recur to authority for a principle so familiar and so accordant with common honesty." The case of *Fisher v. Krutz*, 9 Kan. 501, is analogous to the one before us, where it was held that an agent having charge of lands cannot by a purchase of a tax sale certificate from the county for those lands make himself the owner of the land as against his principal. See, also, *Oldhams v. Jones*, 5 B. Monroe 467; *Schedda v. Sawyer*, 4 McLean 181; *Morris v. Joseph*, 1 West Va. 256; *Grumley v. Webb*, 44 Mo. 445.

The judgment is hereby reversed and the cause remanded to the circuit court with directions to enter up a decree in plaintiff's favor, divesting defendant of title in said real estate by him purchased at the tax sale, and remaining unsold at the time this suit was brought, and investing plaintiff with title, and, also, requiring defendant to account and pay to plaintiff the proceeds of the sale of the parcel of ground sold to Lee and Alonzo Kimbrough, and also the value of the lot on the corner of Dollison and Walnut streets in the city of Springfield at the time of the sale to Wm. A. Comings, deducting therefrom the sum of sixty-two dollars paid by defendant at the tax sale, and, also, the amount by him since paid for taxes, with interest. All concur.